## Cornett v. The Phenix Ins. Co.

1. **Insurance:** WAIVER OF PROOFS OF LOSS: FACTS NOT AMOUNTING TO. A refusal to pay a claim made under a policy of insurance does not constitute a waiver of proofs of loss, unless it is of such kind and made under such circumstances as to justify the inference that such proofs would be unavailing, if made. And so, where a horse was insured against fire and lightning only, but the insured claimed that, though the horse died of disease, the company was liable for the loss, and the company refused to pay if the horse died from any other cause than fire and lightning, such refusal was not a waiver of the proofs of loss required by the policy, but was rather a demand for proof that the horse died by fire or lightning.

2. **Instructions:** MUST BE SUPPORTED BY EVIDENCE. Instructions based upon a theory of which there is no evidence cannot be sustained.

3. **Insurance:** ACTION BARRED BY LIMITATION IN POLICY. The policy in question provided that no action thereon should be sustainable unless brought within six months after the loss. The proofs of loss required by the policy were neither made nor waived within that time. *Held* that chapter 211, Laws of 1880, (Miller's Code, p. 299,) has no application to such a case, and that the action, not having been brought within the six months, was barred.

*Appeal from Decatur District Court.*

TUESDAY, DECEMBER 8.

ACTION upon a policy of insurance against loss by lightning. The policy covered two horses, and while the same was in force one of the horses died, and the plaintiff alleges in his petition that it was killed by lightning. The defendant denied that it was killed by lightning, and denied that the plaintiff furnished the defendant with any proof of loss, and averred that the action was not brought within the time limited in the policy. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*E. W. Curry*, *McIntire Bros.*, and *R. W. Barger*, for appellant.

*Young & Parish*, for appellee.

ADAMS, J.—I. It is not expressly shown that the policy required that notice and proof of loss should be furnished within any given time, or at all. It is, to be

1. INSUR-
ANCE: waiver
of proofs of
loss: facts not
amounting to.

sure, shown that a copy of the policy was attached to the plaintiff's petition, but such copy is not set out in the abstract, and we should be wholly in the dark as to whether it contained any requirements respecting notice and proof of loss, had not the court instructed the jury upon this point. The court instructed the jury to the effect that the burden was upon the plaintiff to prove that he served notice and proof of loss within sixty days from the loss, unlesss the same were waived. No question is made as to the correctness of this instruction, if there was any evidence of waiver, and one of the principal questions discussed by counsel is as to whether there was any such evidence. The defendant assigns as error the giving of the instruction, upon the ground that there was no evidence upon which to base it, and assigns as error the admission of evidence designed to show waiver, upon the ground that it did not have that effect. We come, then, to consider whether the evidence introduced to show waiver had any such tendency. In our opinion it had not.

The evidence relied upon consists of a certain letter written to the plaintiff by one Burch, the general agent of the company, and of statements made by one Albright, the adjuster of the company. It is said that by the letter and statements the defendant repudiated its liability, and thereby waived proofs of loss. The letter written by Burch was in reply to a letter written him by the plaintiff, in which the plaintiff said: "Your agent represented to me. when he took my note and application that if one of my horses died I

would get pay for it. One of my horses mentioned in my policy died Thursday night last, and I wrote you for the necessary blanks to make my proof. I have applied to the resident agent here, Mr. Curry, and he does not seem to fully understand the policy as I do." This letter contains no intimation that the horse was killed by lightning. The plaintiff based his claim upon the mere fact that the horse had died, and prefaced his claim by a statement that the company's agent told him that he would be paid if one of his horses died. Any fair construction of the language shows that the plaintiff designed it to be understood as claiming that the agent's statement was such that he was entitled to be paid for his horse, even if it died by disease or by accident otherwise than being killed by lightning. Not only is this the fair import of the letter, but it is shown by undisputed evidence that he did not understand at that time that his horse had been killed by lightning. On this point we have the testimony of Curry, the agent to whom the plaintiff applied after the loss. Curry testified as follows: "He told me that he had a horse die that was insured in the Phenix. I asked him what was the cause of death. He said it did not make any difference what the horse died with, as the agent who took the application said that if a horse died from any cause he would get pay for it. I told him the company insured only against loss by fire or lightning. He did not claim that the horse had been struck by lightning." The plaintiff himself testified as follows: "In that conversation with Curry he said to me: 'What is the matter with your horse?' I says, 'I cannot tell you.' He said, 'You do not expect to get anything for your horse unless he was killed by lightning, do you?' I told him what the agent told me, that I would get pay for the horse, no difference what he died with."

It was while the plaintiff was ignorant of the cause of the death of the horse, and while he thought that he could recover on the agent's statement, whatever might be the cause of the

death of the horse, that he wrote the letter to Burch. But we do not need to read the letter in the light of these circumstances. It shows upon its face that the plaintiff's claim was not based upon the fact that the horse had been killed by lightning. It shows more; it shows that he did not see the way clear to recover strictly under the provisions of the policy, and was setting up a claim upon the statement of the agent. That Burch so understood, there is no doubt whatever. His reply is as follows: "DEAR SIR: Yours of the 12th is at hand reporting the death of one of your horses, and telling us that the agent gave you to understand that said horse was insured by our policy against death by disease or accident. We have only to refer you to our policy which you hold, and which is the contract between yourself and the Phenix Ins. Co., and if that policy provides for any other loss but that occasioned by fire or lightning, we will weaken. Our policy is so clear on that point that any other statement used by agents is of no consequence. We can hardly understand how an agent would dare to make such a statement to a sane man. We are not liable for loss of horse." If we read this letter as a whole, and especially in connection with the one to which it is a reply, it is abundantly evident that the company had no intention of repudiating its liability if the horse was killed by lightning. The claim repudiated was one which the plaintiff had seen fit to set up outside of the provisions of the policy. Burch's letter did not contain an intimation that the company would refuse to pay if the plaintiff could make proof showing that his loss occurred within the provision of the policy. The letter, then, was not a *waiver* of proof; it was rather a *call* for proof. A refusal to pay does not constitute a waiver of proof unless it is of such kind and is made under such circumstance as to justify the inference that proof would be unavailing. In this case proof that the horse was killed by lightning would have tended directly to remove the only objection which had been suggested by the company.

Cornett v. The Phenix Ins. Co.

But the plaintiff claims that there was other evidence of waiver. He relies upon what the company's agent said to one Fry. The latter, it appears, was acting for the plaintiff in the matter of this loss. The adjuster went to see him, and asked what he knew about the horse being killed by lightning. What information, if any, Fry gave him does not appear. But the result was that the adjuster declined to go and see the plaintiff; saying that he lived eight or nine miles away, and that he had information that the horse was not killed by lightning. It does not appear that up to this time there had been any pretense that the horse had been killed by lightning, and certainly without such pretense there was no reason why the adjuster should go to see him. But in no view did his statement constitute a refusal to pay. We see, then, no evidence of waiver of proof, and the jury should not have been instructed upon the theory that there was.

2. INSTRUC-
TIONS: must
be supported
by evidence.

II. The policy provided that no action on the policy should be sustainable unless brought within six months after the loss. The action does not appear to have been brought within such time. It is claimed, however, that under the statute, Chap. 211, Laws of 1880, (Miller's Code, p. 299) the time was extended. Whether the statute has, under the circumstances, any application to such a case as this, we do not determine. It has, we think, no application where proof of loss is neither made nor waived within the time limited, and, as we find no making or waiver of proof within such time, the defendant's additional position that the claim is barred appears to be well taken.

3. INSURANCE.
action barred
by limitation
in policy.

REVERSED.